

**Decided April 18, 1989**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

| | | |
|---|---|---|
| DONALD A. BUFTON and KATHLEEN JUNE RILEY, | ) ) ) | CIVIL ACTION NO. 88-432 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | MEMORANDUM DECISION RE: MOTION FOR PARTIAL |
| JUNE HA, VICENTE A. SONGSONG, RICARDO B. SONGSONG and MARIAN ALDAN-PIERCE, | ) ) ) | SUMMARY JUDGMENT |
| Defendants. | ) ) ) | |

Plaintiffs have filed a motion for partial summary judgment which is directed to Count One of their complaint. Essentially, it is the plaintiffs' position that as a matter of law they are entitled to specific performance of an option agreement whereby they would be entitled to lease certain property from the defendants. The latter vigorously contest the motion, raising a number of issues. Most can be dispatched – not summarily but with reasonable succinctness. One issue, left for last, presents a problem for resolution which will have a significant impact on the manner of searching titles in the Commonwealth.

778

### GROUNDWORK - AT LEAST A LEASE?

In 1984, defendant Vicente A. Songsong leased a 10,000 square meter parcel to the plaintiffs (Exhibit 2 attached to plaintiffs' motion).1/ The tract number was and is 21899-6. There was just one problem. Songsong had previously sold 2,760 square meters of the property to Jose C. Ayuyu. Yet, Songsong expressly warranted to the plaintiffs in his 1984 lease that he was the owner in fee simple and had the right to lease the property (¶ 2 of Exhibit 2).2/

The long and short of all this is neither Songsong nor the plaintiffs deny the execution and viability of the 1984 lease.

### THE PLOT THICKENS - MAKING THE RECIPE

In 1985, the plaintiffs desired to obtain a loan from the Bank of Hawaii and use as collateral their leasehold interest in tract #21899-6. However, the Ayuyu interest had

---

1/
Any reference made herein to exhibits shall be those attached to the plaintiffs' motion for partial summary judgment, except as otherwise noted.

2/
Songsong has filed an affidavit in which he stated he told the plaintiffs of the Ayuyu interest prior to executing the 1984 lease. Even if this is so (and for the purposes of this motion, it is so assumed) this does not affect the ultimate result reached. One can warrant title, though encumbered, with the anticipation of removing any encumbrances or defects in title. A buyer or lessee, with notice of an encumbrance can rely on the express written warranty of title. Steadman v. Turner, 507 P.2d 799, 803 (NM App. 1973).

still not been removed as a cloud on the title so a somewhat interesting document was prepared and executed by the plaintiffs, Songsong, and the Bank entitled "Personal Undertaking and Option to Lease Real Property" (hereinafter "option"), (Exhibit 1). The parties agreed, inter alia:

1. Songsong would have two years to remove the Ayuyu cloud.

2. Songsong gave plaintiffs and the Bank of Hawaii (in the event plaintiffs defaulted on their loan to the Bank) an option to lease 2,760 square meters of adjoining property belonging to Songsong should Songsong fail to remove the Ayuyu cloud in the two years time.

3. The Bank of Hawaii would loan the plaintiffs money, using the plaintiffs' leasehold interests as collateral.

It is undisputed that: Songsong failed to remove the Ayuyu cloud in the two years time;[3] plaintiffs timely exercised their option; and Songsong has refused to lease the parcel to the plaintiffs. In light of some of the other documents that are before the court, it is understandable the reluctance of Songsong to do so. From the Ayuyu frying pan, he has jumped into the fire of litigation.

_____

[3] Apparently, Songsong finally received a quitclaim deed from Ayuyu on March 10, 1989 - well over the two year period and regarded by the plaintiffs as too little, too late.

## STIRRING UP A STEW

Contrary to an express promise found in paragraph 8 of the option,[4] Songsong deeded 4,131 square meters of the option property in August of 1986 to his son, Ricardo. (Exhibit 3) Thereafter the son leased this same property to defendant Ha and deeded the fee to defendant Pierce. (Exhibits 4 and 5)

When Songsong refused to lease the option property to the plaintiffs, they filed suit against Songsong, Ricardo, Ha and Pierce. After answers were filed, the plaintiffs made their motion now before the court.

## DIGESTING THE ISSUES

The defendants do not really assert that there are genuine issues of fact, although two affidavits have been filed to counter the plaintiffs' motion. As will hereafter be noted, the issues are essentially legal ones, not requiring a factual determination process.[5]

---

[4] Songsong warranted "that he will not make or suffer any sale transfer, lien, encumbrance or other disposition whatsoever of (the option property) or any part thereof prior to the exercise of this option or its release or termination."

[5] Songsong has filed an affidavit which, inter alia, claims: 1) he signed the option without the presence of a notary; 2) he didn't know what he was signing. This does not deter the court in considering plaintiffs' motion for summary judgment because: 1) the answer of Songsong does not allege any such affirmative defenses and the defense of illegality (or the like) of the option agreement are not issues (See Rule 8(c), Com.R.Civ.Pro.); 2) whether or not a notary was present does not affect the recordation and validity of the option since on the face of the document, it complies with the law. Hilderbrandt v. Hilderbrandt, 683 P.2d 1288 (Kan.App. 1984)

781

The defendants[6] raise these issues in opposition to plaintiffs' motion:

1.    There is no consideration for the option  and therefore plaintiffs cannot enforce it.

2.    The  option  is  tantamount to an equitable mortgage and Songsong should be allowed a grace  period to  cure  the title and avoid the requirement that he lease the property to plaintiffs.

3.    The option agreement is void because it  does not  sufficiently describe the property subject to the option.

4.    An error was made in the recordation of  the option  agreement  and  any subsequent transferees or lessees are not put on constructive  notice  by  the recording  statute  of  the existence of plaintiffs' claim.

Each of these issues will be addressed in  the  above order.

A.    Consideration – something for nothing?

Although  at  first blush the option agreement appears complex, the basic agreements between the parties  are  rather straightforward.  Songsong agreed to attempt to clear the Ayuyu

---

[6]
Defendants  Ha  and  Pierce  are represented by one counsel and the two Songsongs by another counsel.  The  issues raised by both counsel are joined together for simplification.

**782**

title within two years but if he was unable to do so, to replace the 2,760 square meters sold to Ayuyu by leasing the option property. This enabled the plaintiffs to obtain a loan from the Bank of Hawaii.

The thrust of Songsong's argument is that he received nothing in exchange for his execution of the option and therefore he is not bound by it. This argument lacks any merit.

The Restatement on Contracts provides in pertinent part:

> (1) To constitute consideration, a performance or a return promise must be bargained for.
>
> . . .
>
> (4) The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person.

Restatement, Second, Contracts § 71.

Songsong's agreement to extend the option to plaintiffs resulted in a promise by the Bank of Hawaii to loan money to the plaintiffs.

Additionally, Songsong's agreement is supported by other consideration - the forbearance of plaintiffs to enforce Songsong's warranty in the 1984 lease. Restatement, Second, Contracts, § 74, comment d.; § 87.

As a matter of law, the option agreement is supported by adequate consideration.

783

### B.    A mortgage - real or fancied?

The option agreement is neither a mortgage nor an equitable mortgage.  Songsong did not encumber his property in exchange for money or other consideration.  There is no debtor/creditor relationship between Songsong and the Bank of Hawaii or even the plaintiffs.  All Songsong agreed was to lease the option property should two events occur:  (1) he failed to clear the Ayuyu cloud within two years or; (2) the plaintiffs became in default under their loan with the Bank of Hawaii.  Any security interest was plaintiffs' leasehold interest - not Songsong's fee interest.

"Mortgage means a contract in which real property is made security for the performance of an act, usually the payment of a debt without the necessity of a change in possession and without the transfer of title."  2 CMC § 4511(e).

A mortgagor pledges his property as security for a debt.  2 CMC § 4522(g).

A plain reading of the option agreement leads to the unalterable conclusion that it is not a mortgage which would invoke the provisions of the Real Estate Mortgage Law,  2 CMC §§ 4511, et seq.

### C.    The option property - described or indescribable?

Defendants claim the option property is a "floating" and unascertainable parcel and since it is not adequately described, the entire option agreement fails.

From the option agreement it is known:

**784**

(1) The parcel is 2,760 square meters within Tract 21899-R2 as shown on Plat No. 2123/83.

(2) It must be located within 60 meters of the N/E boundary line of Tract 21899-6.

(3) The parcel is to be designated by starting at right angles from the northeastern boundary line of Tract 21899-6.

(4) The selection of the location of the property is the choice of the plaintiffs but the parcel must be a contiguous single parcel (see ¶s 2 and 4, Exhibit 1).

This is more than sufficient to describe the option property.

It is a general rule that courts are liberal in construing descriptions of premises to be conveyed and if it is possible by any reasonable rules of construction to ascertain the parcel, the conveyance will not be declared void for uncertainty. 23 AmJur2d, Deeds, § 50.

The above description is, as a matter of law, sufficient to bind Songsong and to put any subsequent purchaser/lessee on notice of the location of the option property. Any such person knows of the potential lease of 2,760 square meters within 60 meters of the N/E boundary line of tract 21899-6. The fact that the precise location is not known until the plaintiffs designate it is of no import. The option agreement description results in giving notice that the plaintiffs have the right to

designate any part of it and a subsequent buyer/lessee of any property within the 60 meters band risks buying or leasing within an area subsequently selected by the plaintiffs.

D. **The index - at whom does the finger point?**

After the option agreement was executed the plaintiffs presented it to the Commonwealth Recorder and the document shows a file # (85-0491) and that it was recorded on February 27, 1985.

Thereafter the Recorder inserted information about the recording in the grantor/grantee index. However, in describing the property purportedly affected by the option, the Recorder listed tract 21899-6 and not the option property to be selected out of Tract 21899-R2. (See Exhibit B attached to the opposition of Ha and Pierce)

Thus the defendants argue that this error results in no constructive notice of plaintiffs' claim to the property the defendants subsequently purchased/leased. This result is reached, it is asserted, because any reasonable and prudent person searching the chain of title would not be alerted nor required to actually look at the document to see if it involves other property. Alternatively or additionally, the defendants argue that the recorder is, in effect, the plaintiffs' agent and if the former made a mistake, any loss is the plaintiffs and not the defendants. Citing, 63 ALR 1057.

The plaintiffs' rebuttal has two prongs. First, it is pointed out that to accept defendants' agency theory, every

grantee/lessee would have to check/double check that the Recorder has accurately indexed the transaction. Even if an accurate listing is made and confirmed by the grantee, this would not be enough because if a subsequent error is made, the grantee is still not "on record." Second, plaintiffs argue the crucial act is the recordation and not the indexing. It is incumbent upon anyone tracing a chain of title to check every document in which the grantor is shown as transferring interest in property.

The court rejects outright defendants' theory of agency. To place the burden on all grantees to continually check on the computer index of the Recorder is not consistent with common sense nor a practical solution.

The alternative is to require a prospective grantee to look at all documents previously recorded for the prospective grantor. For some (most?) grantors this will be a simple task as he or she may own only one parcel. Admittedly, the burden is greater for the proverbial land baron who wheels and deals in property. In the case of Vicente A. Songsong, he appears to fit in the middle. On Exhibit B there are 15 recordings in which he is a grantor. It is clear it is a much less onerous task to look at these 15 documents than to impose the burden upon the grantee to supervise the Recorder's Office.[7]

_____

[7] The defendants have filed an affidavit from a title company which explains their procedures - which is to look at only the documents which are indexed to refer to the property in question. It is the normal practice of a title company to "bring title down" once it establishes a chain of title and therefore, once a search of all documents is made of a particular grantor for a particular parcel, a subsequent review of all recorded documents is not necessary.

787

An additional compelling reason exists for the result reached. The crucial and critical act is the recordation of the document with the Recorder - not the subsequent indexing by the Recorder. It is clear from 1 CMC §§ 3703, 3706, and 3711 that the moment one delivers a document to the Recorder and the latter files (records) it, the world is put on notice of the document. Should a second purchaser walk into the Recorder's Office one hour later and look at the grantor-grantee index but fails to search the documents recorded after the last index was prepared, he takes subject to the prior recorded document. Of course, it is the statutory duty of the Recorder to prepare and keep for public inspection the grantor-grantee index. 1 CMC § 3704. However, it is mechanically and ministerially impossible or certainly impractical to have the index re-printed every time a document is recorded.

Thus, any title search must necessarily include looking at all documents recorded for the particular grantor in question if title has not been "brought down" for the property previously and to review all documents recorded for the grantor since the last index was printed. In this case, it appears to be no more onerous than looking at the 15 documents which appear on Exhibit B.

Were the court to accept the defendants' position, all Recorder mistakes[8]/ would be the responsibility of the grantee.

_____
[8]/
Undoubtedly mistakes will occur in light of the volume of land transactions. For example, in calendar year 1988 there were 4,336. Annual Report, Commonwealth Judiciary, p. 10.

Mistakes of the Recorder can be fairly easily found out by reference to the critical document - the one that is recorded.

It is concluded that the option agreement recorded February 27, 1985 gave notice to the defendants of the plaintiffs' interest in the option property. The fact the Recorder erroneously entered the wrong description does not affect, in any way, the validity and effective notice to the world that as of February 27, 1985 the plaintiffs had the potential right, (which subsequently ripened) to lease 2,760 square meters in Tract 21899-R2.

Summary judgment will be granted plaintiffs on their first cause of action. Plaintiffs shall submit a judgment in a form approved by counsel for the defendants.

Dated at Saipan, MP, this 18th day of April, 1989.

_____
Robert A. Hefner, Chief Judge